# FRANKLIN COUNTY.

## January Term, 1839.

---

Present, Hon. CHARLES K. WILLIAMS, *Chief Justice.*
" STEPHEN ROYCE,
" JACOB COLLAMER,  } *Assistant Justices.*
" MILO L. BENNETT.

---

## Thomas and Benjamin B. Wiley, Appellants, *v.* Joseph H. Brainerd, Appellee.

A court of probate should not remove executors living out of the state, and grant administration to another, when the fact of their living out of the state was known at the time of granting the letters testamentary, when such executors have commenced a suit to recover a claim, and the application for their removal is made by the person sued.

The facts in this case are fully stated in the opinion of the court.

*H. R. Beardsley,* for appellee.

The decree of the court of probate ought to be affirmed by this court, for the following reasons :

1. The executors reside without this state, which alone was a sufficient cause, under the statute, for their removal.

2. They have neglected their duty in not returning an inventory and rendering the account.

They have attempted to evade entirely the laws of this jurisdiction regulating the settlement of estates, both solvent and insolvent.

They are attempting to exercise their authority in the collection and withdrawal of the effects of the testator within

this jurisdiction, and to transfer them to a foreign jurisdiction ; and this to the prejudice of the rights of creditors within this jurisdiction.

To this end they have refused or neglected to represent the estate insolvent, that the creditors may establish their claims before commissioners appointed for that purpose, according to the usual mode under our probate law.

They have refused or neglected to proceed in the settlement of the estate, according to the provisions of the law regulating the settlement of solvent estates.

Our courts do not countenance the appointment of foreign administrators. *Mott's Admr.* v. *Barret,* 5 Vt. R., 333. *Hunt* v. *Fay,* Admr. of Gookin, 7 Vt. R. 170.

If the decree of the court of probate be not affirmed, what remedy have the creditors ?

They ought not to be compelled to litigate their claims in a foreign jurisdiction, and, to require them to do so, is not only an abandonment of our own sovereignty, but a virtual denial of justice to them.

The sureties in the administration bond are insolvent. The result is, therefore, that there is no adequate security or remedy for the creditors, but to remove the executors, before they shall have collected and withdrawn the effects of their testator ; and to refuse them this protection, would be doing them palpable injustice.

*Smalley & Adams,* for appellants.

1. The executors of J. Wiley, who are also residuary legatees, by causing a copy of the will to be proved, became *prima facie* entitled to letters testamentary, which were accordingly granted to them. On the faith of the authority, thus conferred by the probate court, the executors have instituted legal proceedings in the circuit court, and have incurred other expenses in the due administration of the estate. Whilst this suit is in progress the probate court, on application of the defendant in the circuit court, revoke their grant of letters testamentary, without any cause arising subsequently to the first grant, unless it is that the executors have done the very thing they were appointed to do.

2. The application of Houghton to the probate court did not ask for the removal of the executors, but merely that administration should be granted to some suitable person ; and this application, with an order for the publication of the same, was the only notice given to the executors upon the subject. But the probate court, upon this application, proceeded in an arbitrary and unjustifiable manner, not only to appoint an administrator, but to remove the executors. It is true that the probate court, in assigning reasons for this singular decree, have stated that the executors neglected to comply with the order of the probate court made on the 10th of May, 1836. But an examination of the probate records shows that no order upon said executors was ever made on the 10th May, 1836, or at any other time, by said probate court, unless the conditions of the bond, executed by the executors, was an order of that court.

3. The power of the probate court to remove an executor, who resides out of the state, upon giving proper notice, is not denied. But in this case no notice was given of any application for or intention to remove these executors, and if it is pretended that the notice published was designed for that purpose, it is evident, upon the face of the notice itself, that the design was to have the pretence of giving notice, and, at the same time, have the notice of such a character as would effectually deceive the executors. The probate court give notice that application had been made to it to do one act and, under pretence of this notice, it does another entirely distinct and different act.

4. But, granting that the probate court have power to remove the executors, without notice, or that proper notice was given, the question then is, whether this power was properly exercised. The power of removing an executor may be said to be discretionary in the probate court, yet this must be the exercise of a legal discretion and not the mere captious exercise of arbitrary power. It is said the executors resided out of the state. This is true ;-and it is also true that they resided out of the state on the 10th of May, 1836, when the same court, in the exercise of their discretion, granted letters testamentary to these executors, but in Dec. 1837, they are removed upon that ground

5. Neglecting to return an inventory and account, is no

FRANKLIN,
January,
1839.

T. & B. Wiley
v.
Brainerd.

ground of removal, unless the executors are called on to do so and neglect, and especially in this case, as this administration was merely ancillary to the proceedings in Massachusetts. No creditors or heirs resided in this state, and the only purpose for which the letters testamentary were taken, was to enable the executors to collect the note against Houghton; and it does not appear that any person has suffered or is likely to suffer any injury or inconvenience by the neglect of the executors in this particular.

6. The insolvency of the bail on the probate bond furnishes no ground to sustain the removal of the executors. It does not appear that the executors were aware of the insolvency of their surety, or that they were called on to furnish other bail. They ought, at all events, to have an opportunity to furnish other bail before they are removed for that cause.

7. It is evident, from all the facts in this case, that the whole of this proceeding has been got up by a debtor of the estate to defeat a suit which the executors were prosecuting against him in the circuit court. If Houghton has a just claim, he can recover in the circuit court; if he has not, he ought not to be permitted to defeat that suit in this sideway manner.

The opinion of the court was delivered by

WILLIAMS, Ch. J.—It appears that John Wiley died in the state of Massachusetts, having made a will and appointed the appellants his executors, who caused the will to be approved before the probate court for the county of Middlesex, in which county the deceased had his domicil. In this will the appellants were residuary legatees, and the execution of the will and administration of the estate was committed to them.

According to the provisions of the 23d section of the probate act of this state, the executors filed a copy of the will before the probate court for the district of Georgia, on the 11th day of April, 1836. Notice to all concerned was given by publication in the newspaper printed in St. Albans, in this state, and on the 10th of May, 1836, the will was filed and recorded, and letters testamentary, duly approved, were granted to the executors therein named.

The executors commenced a suit against Abel Houghton,

on a note payable to the testator, returnable to the circuit court of the United States, in the district of Vermont, at their October term, 1836, in which they made a profert of their letters testamentary in the usual form. In this suit, Houghton appeared, and at the October term of the court, in 1837, filed a plea in offset. This suit is still pending in the circuit court.

On the 26th October, 1837, he made application to the probate court for the district of Georgia in writing, representing that the said John Wiley, deceased, had estate within this state, in the district of Georgia, and requesting that letters of administration might be granted to some proper person, but nothing was mentioned about removing the executors.

On this application, the court of probate made an order reciting that the order of the court of probate had not been complied with, and that the executors had neglected to return an inventory or render an account agreeably to the order of the court, and directed that notice should be given to the executors to appear and shew cause why they should not be discharged from their trust, and some suitable person appointed administrator. It does not appear, however, that any order was made by the court of probate, which has been disobeyed.

Notice of the application was duly given to the executors, in which, however, nothing appears to be said about removing them.

On the 30th November, A.D. 1837, the executors appeared before the court of probate, and the court, reciting that they lived out of the state and out of the jurisdiction of the court, and had not complied with the order and decree of the court of probate, decreed that their powers, before that time granted to them, should cease; and granted letters of administration, with the will annexed, to Joseph H. Brainerd, who represented the estate insolvent, and commissioners were appointed to receive, examine and adjust the claims of the creditors. From this order the executors appealed, and notice was given to the administrator *de bonis non*.

It appears, further, that the sureties of the executors are doubtful as to their responsibility.

FRANKLIN,
*January,*
1839.

T. & B. Wiley
*v.*
Brainerd.

FRANKLIN,
January,
1839.

T. & B. Wiley
v.
Brainerd.

Since the removal of the executors, they have returned an inventory and presented an account, which has been filed in the probate office, but not acted on.

It does not appear that there are any creditors in this state, unless Houghton is one, who claims a balance due to him; nor, does it appear, there is any other estate except the demand against Houghton, and a small balance of about sixty seven dollars due from another person, which is credited in the executors' account.

The question is whether this order of the court of probate shall be reversed or affirmed.

As no creditor or person interested in the estate of the deceased appears to be dissatisfied with the executors, except Houghton, who has a controversy with the estate, and it is yet undecided and uncertain whether he is a debtor or creditor, the considerations should be weighty to induce the court to remove the executors on the application of one situated like him. And, further, as the effect of affirming the decree of the probate court will be to stop the suit in the circuit court, and subject the estate to the whole cost of that suit, it affords an additional reason why the court should be cautious in exercising their discretion in removing the executors. The suit was commenced before a court of competent jurisdiction, and it was the duty of the executors to commence it, for the purpose of collection, if any thing was due.

The first reason assigned by the court of probate is, that the executors reside out of this state, and if this reason is imperative, and in all cases the executors, who reside out of the state, should be removed, notwithstanding they resided out of the state when the letters testamentary were granted, then these executors were properly removed. We are not prepared to accede to this proposition in its fullest extent. It is undoubtedly proper that the executors and administrators should reside within this state, and be within the jurisdiction of its courts. None should be appointed or recognized by the court of probate, unless they reside within this state, except in particular cases, where there is a sufficient and apparent reason for the contrary course. But, in relation to granting letters testamentary or letters of administration, with the will annexed, when the deceased had his

domicil in another government, and his will was made, allowed and proved in that government, we think the court of probate are not restricted to granting such letters to persons residing within the state. In such wills the executors usually reside out of the state, and if the administration is only ancillary, only for the purpose of collecting property to be distributed according to the laws of the government where the deceased had his domicil, and no persons within the state have an interest in the distribution, it may be highly proper to commit the execution of the will or grant letters of administration to the same persons, who are authorized by the proper tribunal, where the deceased had his domicil.

It is a subject on which the court of probate may exercise a discretion ; and, as public notice is to be given before any such will is to be recorded, the creditors or persons in interest should then appear and make their objection against granting such letters to persons out of the state.

If it was a sufficient reason why the letters testamentary should not be granted to the appellants, because they lived out of the state, it existed in May, 1836, and it would be highly inconsistent for a court of probate, at one sitting, to grant letters of administration or letters testamentary, and, at another, to vacate them for reasons which existed and were known to them when such letters were granted.

Nothing intervened between May, 1836, and November, 1837, as a reason why these executors should not discharge the trust committed to them.

If the bail had become insufficient and insecure, ample provision is made for such a case by the 13th section of the probate act, and the executors should have had notice and opportunity to obviate any objection on this account before they were removed.

The next reason assigned is the neglect of the executors to return an inventory and render an account. There was no order of the court of probate requiring this, which has been disobeyed. If there has been a neglect in this particular, it is a breach of their administration bond, and a neglect of a duty pointed out by statute. We can discover no neglect in this particular. We do not learn that there is any estate, either real or personal, in this state to be inventoried or appraised. The principal, and almost the only, claim

was in dispute and in the way of a final adjustment, before a judicial tribunal, and no account could be rendered, with propriety, until the litigation on this subject was closed, and the claim finally adjudicated. The only account that they could render would be their own charges against the estate, and not of any money they had collected, except the small claim of $67 dollars, before mentioned.

None of the reasons, therefore, assigned by the court of probate are sufficient, in our view, to supersede the executors appointed by the testator, in whom he had confidence, and to appoint an administrator *de bonis non.*

It is said, however, that the creditors of this estate have no remedy, and if the suit is permitted to go on, the funds may be drawn out of our jurisdiction. To this, it may be remarked that it does not appear that there are any creditors, as no one has appeared and claimed to be such, except Houghton, and it is yet to be determined whether he is a creditor or debtor, and if there are no creditors or persons interested to have the funds remain, they should go out of the state and be distributed according to the provisions of the will.

If Houghton is a creditor, he had the same opportunity of prosecuting for his claim that every creditor had. The executor or administrator is in no case compelled to represent an estate insolvent. It is a convenient way to adjust the claims against an estate, but still it is not the only way of settling an estate. If an administrator does not represent an estate insolvent, he may be liable to pay the full amount of the claims of the creditors.

These executors may be liable to the creditors in this state for the amount of their debt, or, at least, for all the assets which come into their hands in this state. Houghton might establish his claim as a creditor, either by original suit or by his plea in offset, and has all the remedy which creditors have against estates not represented insolvent. It can be no reason for the appointment of an administrator *de bonis non,* either to have the estate represented insolvent or to compel a suit in the courts of the state for the recovery of debts due to the estate of the deceased. Inasmuch, therefore, as the decree of the court of probate, complained of, was founded on the proceedings preparatory thereto, which were on the application of a person having a controversy

with the estate, and sued as a debtor of the estate ;—as a suit has been commenced, which must be discontinued, if the executors are removed—as there has been no neglect of duty in disobeying any order of the court of probate—no neglect of duty in not returning an inventory or account—as there is nothing to be inventoried, and the time has not arrived for a final account—and as there are no creditors or persons interested, except as before mentioned, who are dissatisfied, we think the executors ought not to be removed. The decree or order of the court of probate, made on the 30th November, 1837, that the powers of the executors should cease, and that administration *de bonis non*, with the will annexed, be granted to the appellee, is reversed and vacated, and the executors will recover their cost.